UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CROWN CASTLE USA INC., CROWN
CASTLE GT COMPANY LLC, CROWN
CASTLE ATLANTIC LLC, CROWN
ATLANTIC COMPANY LLC and CROWN
COMMUNICATION INC.,

                    Plaintiffs,              05-CV-6163T

        v.                                   **DECISION
                                             and ORDER**

FRED A. NUDD CORPORATION, UNDERHILL
CONSULTING ENGINEERS, P.C., GEORGE R.
UNDERHILL, STEVEN F. CARINI and DEREK
R. HARTZELL,

                    Defendants.
_____

## __INTRODUCTION__

     Crown Castle USA Inc., Crown Castle GT Company LLC, Crown
Castle Atlantic LLC, Crown Atlantic Company LLC and Crown
Communication Inc., (collectively "Crown") bring this action
against defendants Fred A. Nudd Corporation ("Nudd"), Underhill
Consulting Engineers, P.C., George R. Underhill (collectively
("Underhill"), Steven F. Carini ("Carini") and Derek R. Hartzell
alleging breach of contract and professional negligence as to
certain defendants in performing their work. Nudd moves for summary
judgment seeking dismissal of the following: (a) all claims by
Crown of breach of Contract (Count II) and breach of implied
warranty (Count IV) relative to twenty-nine of the thirty-nine
monopoles at issue in this litigation;[1] (b) Crown's claims of fraud

_____

[1] According to Crown, Nudd's motion incorrectly states that Crown's claims are based on twenty-nine
monopoles that were acquired from other entities and not built directly by Nudd for Crown. Crown states that for two
of the twenty-nine monopoles that are the subject of Nudd's summary judgment motion (BUN 816633 and 816745),
Crown's claims are based on work Nudd performed directly for Crown pursuant to a Construction Services
Agreement ("CSA"). Crown contends that pursuant to the Scope of Work attached to the CSA and subsequent orders

(Count VI); (c) all claims made by Crown lacking ownership interest in any monopole; and (d) Crown's claims of negligence (Count V).

Nudd asserts that twenty-nine of the thirty-nine monopoles at issue in this action were purchased and delivery was tendered more than four years before the commencement of this law suit on April 8, 2005. According to Nudd, the monopoles constitute "goods" as that term is defined under the Uniform Commercial Code ("U.C.C."). Consequently, Nudd argues that the four-year statute of limitations provided in U.C.C. § 2-725 governs in this case and claims relating to the twenty-nine monopoles must be dismissed. In addition, Nudd contends that Crown's allegations of fraud lack particularity as required by Federal Rules of Civil Procedure 9(b) and thus are also subject to dismissal. Moreover, Nudd alleges that Crown's claims of negligence fail under the "economic loss" rule, which prohibits negligence claims where the damages are purely economic as seen in the allegations of the Complaint. Lastly, Nudd moves to dismiss for lack of standing as to Crown Castle USA Inc., Crown Castle GT Company, LLC and Crown Castle Atlantic, LLC because, according to

---

issued by Crown, Nudd designed and/or constructed at least twelve monopoles for Crown. See Compl. at ¶ 20. There are a total of thirty-nine monopoles at issue in this litigation. Accordingly, subtracting twelve because of the CSA leaves only twenty-seven monopoles. However, in Crown's Answers to Underhill's Interrogatories, Crown states that "Crown acquired twenty-nine monopoles ... via various asset purchase agreements[.]" See Crown's Answers to Underhill's Interrogatories at #2(i) attached as Ex. F to Marcus Aff. Further, Crown produced a chart in its Answers to Underhill's Interrogatories identifying twenty-nine monopoles including BUN 816633 and BUN 816745 from which it claims it acquired such monopoles from asset purchase agreements. See id. at #2(h). Given these inconsistencies, the Court will only consider for purposes of this motion, the twenty-seven monopoles. The Court will not consider monopoles which have been identified as BUN 816633 and 816745 since this is a material fact that needs to be resolved by the parties with further discovery. Accordingly, reference to the monopoles at issue in this motion will only be to the twenty-seven monopoles and not the twenty-nine monopoles.

Nudd, those companies do not possess an ownership interest in the goods at issue in this litigation.

Crown opposes Nudd's summary judgment motion and addresses each of Nudd's arguments. Crown argues that the Court should deny Nudd's motion and hold that the six-year statute of limitations applies to Crown's contract-based claims. In the alternative, Nudd's motion for summary judgment should be denied as premature and the Court should hold that the accrual date of the six-year statute of limitations for Crown's contract claim is a fact issue that can and should be determined only upon the completion of discovery in this case. In addition, Crown contends that the statute of limitations applicable to Crown's breach of contract claims may be tolled as a consequence of Nudd's conduct in performing services for Crown while concealing the known deficiencies in its monopoles. Moreover, Crown argues that dismissal of the fraud claims is improper at this time because discovery remains to be completed, the information for the fraud is within Nudd's control and such information will be developed only after Crown deposes Nudd's employees. Further, Crown claims that the economic loss doctrine does not apply to and does not compel dismissal of Crown's professional negligence claim against Nudd.

For the reasons set forth below, Nudd's motion for summary judgment is granted in part and denied in part.[2]

---

[2]The parties are reminded that pursuant to Local Rule of Civil Procedure 7.1(f), "[w]ithout prior approval of the Court, briefs and memoranda in support of or in opposition to any motion shall not exceed twenty-five pages in length and reply briefs shall not exceed ten pages in length. . . ." (emphasis added).

## BACKGROUND

Nudd fabricates steel and steel components and sells the fabricated products, including cellular phone towers ("monopoles") to various companies.[3] The monopoles are cylindrical shaped structures and they exceed 100 feet in height. They are also designed to carry loads such as antennas, platforms and other equipment necessary to transmit cellular signals through the air. See Affidavit of Lowell Nudd, ¶¶ 2-3 ("Nudd Aff.") The monopoles are transported by truck to the job site and depending on the customer's preference, either employees of Nudd or contractors hired by the customer install the monopoles. According to Nudd, maintenance of the monopoles is the responsibility of the customer. The contracts for sale of each monopole contained pricing for the monopole, related parts and delivery to the job site. Installation charges were invoiced separately if the customer selected Nudd to perform installation. See Affidavit of David P. Marcus, ¶ 20 ("Marcus Aff.")

During 1995 and March 3, 2000, Nudd fabricated and sold the monopoles that are at issue in this case to wireless carriers Frontier Cellular, NYNEX Mobile Communications, Bell Atlantic Nynex, Nextel Communications and Summit Technical Group. See Nudd Aff., ¶ 7. Crown subsequently acquired possession and ownership of all the monopoles between March 31, 1999 and October 6, 2000

---

[3]Nudd is located in Ontario, New York and it manufactures the monopoles at its plant in Ontario, NY.

through asset purchase agreements. <u>See</u> Marcus Aff., ¶ 12.[4] Two of the monopoles were acquired on resale by one of the Crown entities in 1999, and the remainder were acquired on resale by Crown in 2000. <u>See</u> Crown's Ans. to Underhill #2(i) attached as Ex. F to Marcus Aff. At the time Crown acquired the monopoles, they had been sold and delivered to the original purchaser and was placed in operation following the original sale. <u>Id.</u> Accordingly, each of the monopoles that Crown acquired from the asset purchase agreement was purchased by and delivered to the original purchaser between the years 1995 and 2000.

On January 12, 2001, Crown and Nudd executed a CSA. <u>See</u> Affidavit of Andrew Bazinet, ¶ 3 ("Bazinet Aff."), Ex. 3, Compl. ¶ 15. The CSA contained a Scope of Work, which described aspects of wireless tower construction and other services Nudd would provide to Crown. <u>See id.</u> According to Crown, pursuant to the CSA, Nudd designed, fabricated and/or constructed twelve monopoles directly for Crown. <u>See id.</u>, ¶ 5. Accordingly, in addition to the monopoles Crown acquired from other entities that Nudd originally designed, fabricated and/or constructed, Nudd also constructed additional monopoles pursuant to the CSA. With respect to the twenty-seven monopoles[5] that Crown acquired from other entities, it is undisputed that there was no global service agreement between Nudd

---

[4]The chart included in defendant's moving papers identifies each of the twenty-nine monopoles at issue in this summary judgment motion. It also contains the date and identity of the entity from which one of the Crown plaintiffs acquired the monopole. <u>See</u> Statement of Material Facts, ¶ 10.  The information in the chart is reproduced from Crown's sworn responses to co-defendant Underhill's Interrogatories. <u>See</u> Marcus Aff., Ex. F.

[5]See note 1.

and its other customers similar to the CSA between Crown and Nudd
for the twelve monopoles that were directly purchased under the
CSA. Nudd does admit however, that "the contracts of sale for each
monopole were generally comprised of various transaction documents
such as quotations furnished by Nudd, a corresponding purchase
order issued by Nudd's customers and Nudd's invoices." See Marcus
Aff., ¶ 9.

According to Crown, Nudd was aware at least as early as June
2001 that the monopoles it designed, fabricated and constructed
would not meet the specified design loading. See Affidavit of David
Patrick ("Patrick Aff."), Ex. 5. Nudd notified other customers that
it knew that its monopoles would not meet the design standard
specified in Nudd's design documents, and that its customers'
monopoles should be evaluated and may need to be modified to
support their designed loads. See id. In particular, Nudd told a
customer (not Crown) that "A further review of the design program
indicated that an incorrect load factor was used for the design of
this tower. This tower will not meet the EIA design standard. There
may be other sites that will not meet the original design
parameters." See id., ¶ 17 (emphasis in original). Moreover, Nudd
advised another customer that "We will make these modifications
with our personnel at our expense. We will provide SBA with stamped
drawings reviewed by an outside engineer to ensure that all of
these monopoles meet the original design specifications." See id.,

¶ 31. Nudd did not notify Crown of the same monopole deficiencies at that time.

In November 2003, a monopole designed and constructed by Nudd for another company in Oswego, New York collapsed. See Bazinet Aff., ¶ 12. When Crown became aware of the collapse, it became concerned that the monopoles Nudd designed and manufactured by Nudd and sold to Crown were defective. See id. Accordingly, Crown began an investigation as to the monopoles. See id. The analysis by Crown revealed that the monopole shafts, base plates, anchor rods and foundations for each of the monopoles were defective, overstressed and did not have the capacity to support the loads for which they were designed. See Crown's Compl., Ex. ¶¶ 29-32.

Crown filed a Complaint against defendants on April 8, 2005 alleging that Nudd designed, fabricated and constructed monopoles for Crown that contained design and construction defects. In its Complaint, Crown's only claim for damage is the cost to repair the allegedly defective monopoles. See Marcus Aff., ¶ 16. Damages claimed are attributable solely to the cost to repair the allegedly defective monopoles. No damages are claimed for the provision of negligent service to Crown as it relates to the monopoles at issue in this motion. See id., ¶ 21.

## DISCUSSION

### I.   Summary Judgment Standard

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine
issue as to any material fact and that the moving party is entitled
to a judgment as a matter of law." See Fed.R.Civ.P. 56(c). A party
seeking summary judgment bears the burden of establishing that no
genuine issue of material fact exists. See Adickes v. S.H. Kress &
Co., 398 U.S. 144, 157 (1970). "[T]he movant must make a prima
facie showing that the standard for obtaining summary judgment has
been satisfied." See 11 Moore's Federal Practice, § 56.11[1][a]
(Matthew Bender 3d ed.) "In moving for summary judgment against a
party who will bear the ultimate burden of proof at trial, the
movant may satisfy this burden by pointing to an absence of
evidence to support an essential element of the nonmoving party's
claim." See Gummo v. Village of Depew, 75 F.3d 98, 107 (2d
Cir.1996)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23
(1986)), cert denied, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate
"specific facts showing that there is a genuine issue for trial."
See Fed.R.Civ.P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 250 (1986). To do this, the non-moving party must present
evidence sufficient to support a jury verdict in its favor. See
Anderson, 477 U.S. at 249; see also Fed.R.Civ.P. 56(e)("When a
motion for summary judgment is made and supported, an adverse party
may not rest upon the mere allegations or denials of the adverse
party's pleading, but the adverse party's response, by affidavits
or as otherwise provided in this rule, must set forth specific

facts showing that there is a genuine issue for trial"). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." See Leon v. Murphy, 988 F.2d 303, 308 (2d Cir.1993). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).

## II.  **Statute of Limitations**

As a general matter, a four-year statute of limitations applies under the New York version of the U.C.C.[6] to contracts for the sale of goods and a six-year statute to all other contracts.[7] The threshold question therefore, is whether a contract is for the sale of goods and is therefore subject to the U.C.C. four-year statute of limitations and if not, the six-year limitations period applies. "In determining whether a contract is for the sale of goods, and thus covered by the U.C.C., it is necessary to look to the 'essence' or main objective of the parties' agreement." See North Am. Leisure Corp. v. A & B Duplicators, Ltd., 468 F.2d 695, 697 (2d Cir. 1972); Medinol Ltd. v. Boston Scientific Corp., 346 F.Supp.2d 575, 593 (S.D.N.Y. 2004); Old Country Toyota Corp. v. Toyota Motor Distributors, Inc., 966 F.Supp 167 (E.D.N.Y. 1997) (In

---

[6]U.C.C. § 2-725 provides in pertinent part as follows: "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued."

[7]C.P.L.R. § 213 governs service contracts under which there is a six year proscriptive period.

determining whether UCC § 2-725 applies to a hybrid contract for goods and services, the decision will be controlled by the dominant element test).

"If the provision of services or rendition of other performance predominates and is not merely incidental or collateral to the sale of goods, then the contract will not be subject to" the U.C.C. See Dynamics Corp. of Am. v. Int'l Harvester Co., 429 F.Supp. 341, 346 (S.D.N.Y.1977) (applying New York law); see also Triangle Underwriters, Inc. v. Honeywell, Inc., 604 F.2d 737 (2d Cir.1979) (applying New York law and following Dynamics Corp.); Cary Oil Co. v. MG Ref. & Mktg., Inc., 90 F.Supp.2d 401 (S.D.N.Y.2000) (same). The fact that the seller renders incidental service does not alter the character of the transaction as a sale of goods. See Sawyer v. Camp Dudley, 102 A.D.2d 914 (3d Dept. 1984); Levin v. Hoffman Fuel Co., Division of Chevron, Inc., 94 A.D.2d 640 (1st Dept. 1983) (delivery of fuel oil).

   A.   **Contract for the sale of goods versus sale of services**.

Crown contends that the main objective of the contracts between Nudd and the original purchasers of the monopoles at issue was the design, fabrication and installation of such monopoles. See Pl. Br. at 10. In addition, Crown claims that the design, fabrication and installation of the monopoles were services, which predominate over the sale of the monopoles and thus the subject contracts are agreements for services and not goods. See id. State and Federal Courts applying New York law have consistently held

that services such as design, fabrication and installation work "amount to no more than short-lived incidents of the sale [and] they do not transform the contract into one for the provision of services and thereby avail the contracting parties of two additional years in which to assert their claims." See J.H. Hass Co. Inc. v. Frank A. Kristal Assoc., Inc., 127 A.D.2d 541, 542 (1st Dept. 1987).

    **B.**   **The Court finds that this was a contract for the sale of goods**.

It has been held that the term "goods"[8] should be given a broad construction so as to insure that the purpose of the U.C.C. to provide uniformity in commercial transactions is not defeated. See Alpha Portland Industries Inc. v. Wheelabrator-Frye Inc., 79 U.S. Dist. LEXIS 101109 (S.D.N.Y. 1979) (citations omitted). Thus, it has been held that a contract for the sale of computer "hardware" (equipment) and "software" (both standard and specially designed programming) was in essence a sale of goods since the primary interest of the plaintiff in entering into the contract was the acquisition of a certain model of equipment, with service aspects incidental. See Triangle Underwriters, 604 F.2d at 737;[9] see also Aluminum Co. of Am. v. Electro Flo Corp., 451 F.2d 1115

---

[8] U.C.C. §2-105 defines "goods" in pertinent part as follows: "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action.

[9] In Triangle Underwriters, the computer system was installed by defendant, who agreed to train the purchaser's employees in its use. The Court held that a computer hardware and software agreement was for the sale of good and not services. Here, Nudd did not train any of the Crown employees and the product Crown purchased, which were the monopoles, was a tangible and movable object.

(10th Cir. 1977) (held that contract for sale of electrified floor, which would be carried on a trailer for use in conjunction with an amusement ride, despite involving some engineering and design aspects, was in essence sale of goods). Similarly, in LILCO v. IMO Industries, Inc., 6 F.3d 876 (2d Cir. 1993), it was held by the Second Circuit that the sale of generators for a nuclear power plant was a U.C.C. Art. 2 sale of goods despite extensive design, engineering and construction management services.

In the instant action, Nudd entered into various agreements with the original purchasers of the monopoles, which included certain services such as design and fabrication. However, as demonstrated by the cases cited above, "[a] sale of equipment is not removed from the scope of Article 2 merely because the equipment was specifically designed and manufactured before delivery or installed by the supplier." See Alpha Portland, 79 U.S. Dist. LEXIS 101109 at *5, n. 3, quoting Lincoln Paper Co., Inc. v. Dravo Corp., 436 F.Supp. 262, 276 (D.Me. 1977). The contracts for sale of each monopole contained pricing for the monopole, related parts and delivery to the job site. Installation charges were invoiced separately if the customer selected Nudd to perform installation. Although Nudd originally designed, fabricated and/or constructed the monopoles, Crown has not provided any factual or legal basis to refute the conclusion that the only reason Nudd and the original purchasers had any relationship at all was for the sale of monopoles. The only reason the services were provided was

to aid Nudd's sale of monopoles to the original purchasers. See Genpharm, 361 F.Supp.2d at 55.

Furthermore, Crown's own Complaint alleges damages based on defects in the design and fabrication of the physical product, not for any services provided to Crown. Crown's claims of damage are based entirely on defects in the monopoles and not for services provided by Nudd. See Old Country Toyota, 96 F.Supp. at 169 (To determine whether the sale of goods or service predominates in a transaction, courts look to "the face of the complaint"). Accordingly, the contracts between Nudd and the original purchasers for the sale of the twenty-seven monopoles were contracts for the sale of goods governed by Article 2 of the U.C.C. and therefore, the four-year statute of limitations under U.C.C. §2-725 is applicable to those contracts.

   C.   **Equitable Tolling of the Statute of Limitations**.

Under New York law equitable estoppel may arise in either of two ways. "Equitable estoppel sufficient to bar the interposition of the statute of limitations results from representations or conduct which have induced a party to postpone bringing suit on a known cause of action, or from the fraudulent concealment of an action which is unknown to a party." See Perry v, A.H. Robins Co., Inc., 560 F.Supp. 834, 835 (N.D.N.Y.1983) citing Knaysi v. A.H. Robins Co., 679 F.2d 1366, 1368 (11th Cir. 1982) (applying New York law). Crown contends that Nudd fraudulently concealed the monopole deficiencies from Crown. See Complaint, ¶¶ 73-79. In this regard,

Crown relies on two cases, namely, <u>Simcuski v. Saeli</u>, 44 N.Y.2d 442 (1978)[10] and <u>Erbe v. Lincoln Rochester Trust Co.</u>, 13 A.D.2d 211 (1961).[11] Defendant argues that Crown is not entitled to invoke the doctrine of equitable estoppel because Crown and Nudd do not stand in a fiduciary relationship.

Generally, "mere silence or failure to disclose the wrongdoing is insufficient" (<u>Zoe G. v. Frederick F.G.</u>, 208 A.D.2d 675, 676 (2d Dept. 1994; <u>see</u> <u>Smith v. Smith</u>, 830 F.2d 11, 12-13 [2d Cir.1987]) to support an estoppel, but concealment without actual misrepresentation may form the basis for invocation of the doctrine if "there was a fiduciary relationship which gave [the] defendant an obligation to inform [the] plaintiff of facts underlying the claim." <u>See</u> <u>Jordan v. Ford Motor Co.</u>, 73 A.D.2d 422, 424 (4th Dept. 1980); <u>Hetelekides v. Ford Motor Co.</u>, 299 A.D.2d 868 (4th 2002). In general, "[a] fiduciary relationship may exist where one party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge" <u>See</u> <u>WIT Holding Corp. v. Klein</u>, 282 A.D.2d 527, 529 (2d Dept. 2001); <u>see also</u> <u>Chimento Co. v. Banco Popular de Puerto Rico</u>, 208 A.D.2d 385, 386 (1st Dept. 1994).

---

[10]In <u>Simcuski</u>, the patient relied on her physician for proper diagnosis and treatment of the ailment that plagued her after surgery. His false assurances regarding curative treatment precluded the plaintiff's earlier discovery that the physician's malpractice was the cause of her injury and consequently produced the delay in filing suit.

[11]In <u>Erbe</u> the beneficiaries relied on the trustee to honor his duty of loyalty in managing trust property, and the trustee concealed his self-dealing by false statements about the manner in which he acquired or held the trust property and about his legal right to acquire the stock. In each case the defendant had control and superior, or exclusive, knowledge of facts necessary for the plaintiff to make out a cause of action. Second, the defendant by affirmative misstatements concealed these essential facts from the plaintiff.

Here, even if Crown is able to allege that the fraud resulted from omission of information by Nudd, Crown must still establish that a duty to disclose such information arose as a result of a special relationship such as a fiduciary relationship between parties, or that a duty to disclose arose because Nudd possessed "superior knowledge not readily available to the plaintiff"). See Hughes v. BCI Int'l Holdings, Inc., 452 F.Supp.2d 290, 303 (S.D.N.Y. 2006). The Complaint alleges that Nudd, as the designer, manufacturer and fabricator of the monopoles, became aware or should have became aware that the monopoles owned by Crown were deficiently designed and/or constructed and other wise failed to comply with design specifications and generally accepted industry standards. Further, Crown alleges that Nudd failed to inform Crown of the possibility that the monopoles were overstressed and dangerous despite Nudd's awareness of the monopole deficiencies. None of these allegations demonstrate a fiduciary relationship between Crown and Nudd.

With respect to any claims that Nudd may have had superior knowledge not readily available to Crown, this claim is also not viable. Crown acquired possession and ownership of all the monopoles between March 31, 1999 and October 6, 2000 through asset purchase agreements. According to Crown, Nudd was aware at least as early as June 2001 that the monopoles it designed, fabricated and constructed would not meet the specified design loading. See Patrick Aff., Ex. 5. Nudd notified other customers that it knew

that its monopoles would not meet the design standard specified in Nudd's design documents, and that its customers' monopoles should be evaluated and may need to be modified to support their designed loads.[12] See id. Crown claims that Nudd did not notify Crown of the same monopole deficiencies at that time. However, the undisputed facts show that between March 1999 and October 2000, when Crown acquired possession of the monopoles, Nudd did not notify any of its customers concerning possible defects in their monopoles. It is also undisputed that it was not until sometime in June 2001 that Nudd notified some of its customers that the monopoles it designed, fabricated and constructed would not meet the specified design loading. See Patrick Aff., Ex. 5. Thus, the Court concludes that Crown is not entitled to invoke the doctrine of equitable estoppel.

### III. Fraud Claim Under Federal Rules of Civil Procedure 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure sets forth special pleading requirements for claims involving fraud, and it is well-settled that a complaint alleging fraud must comport with Rule 9(b). See Fed.R.Civ.P. 9(b); see also Ganino v. Citizens Util. Co., 228 F.3d 154, 168 (2d Cir.2000). Rule 9(b) requires that when alleging fraud, "the circumstances constituting fraud ... must be stated with particularity." See Fed.R.Civ.P. 9(b). To comply with the requirements of Rule 9(b), an allegation of fraud must specify:

---

[12]In particular, Nudd told a customer (not Crown) that "A further review of the design program indicated that an incorrect load factor was used for the design of this tower. This tower will not meet the EIA design standard. There may be other sites that will not meet the original design parameters." See id., ¶ 17 (emphasis in original). Moreover, Nudd advised another customer that "We will make these modifications with our personnel at our expense. We will provide SBA with stamped drawings reviewed by an outside engineer to ensure that all of these monopoles meet the original design specifications." See id., ¶ 31.

"'(1) those statements the plaintiff thinks were fraudulent, (2) the speaker, (3) where and when they were made, and (4) why plaintiff believes the statements fraudulent.'" See Cromer Fin. Ltd. v. Berger, 137 F.Supp.2d 452, 468 (S.D.N.Y.2001) (quoting Koehler v. Bank of Bermuda Ltd., 209 F.3d 130, 136 (2d Cir.2000)); see also Acito v. IMCERA Group, Inc., 47 F.3d 47, 51 (2d Cir.1995).

Defendant claims that plaintiff's sixth cause of action is defective in that it fails to plead fraud with particularity as required by Rule 9. Count Six alleges that defendant fraudulently concealed knowledge of the deficiencies of the monopoles it sold to Crown. See Complt. at ¶¶ 74-79. Crown contends that the requirement that the pleadings for fraud be stated with sufficient particularity is relaxed when, such as this case, there are facts peculiarly within the defendant's knowledge. See Pl. Br. at 18-19. However, even the relaxed standard does not eliminate the particularity requirement, although the Court recognizes that the degree of particularity required should be determined in light of such circumstances as whether the plaintiff has had an opportunity to take discovery of those who may possess knowledge of the pertinent facts. See Affiliated FM Ins. Co. v. Jou Jou Designs, Inc., 1997 WL 473382 at *3 (S.D.N.Y. 1997). "A complaint that fails to enumerate any specific facts supporting an inference of knowledgeable participation in the alleged fraud, will not satisfy even a relaxed standard." See Devaney v. Chester, 813 F.2d 566, 569 (2d Cir.1987).

In this case, Crown failed to provide any of the required detailes under the <u>Koehler</u> standard, either in the Complaint or in discovery responses. Crown did not provide any information as to when Nudd allegedly defrauded plaintiffs, who committed the acts of fraud, who the alleged fraud was communicated to or why Crown believes the acts were fraudulent. Moreover, Crown has failed to demonstrate how the alleged fraud has caused Crown harm or how Crown relied upon the fraud. Further, Crown presents no affidavit or evidence showing what material facts it expects to learn through discovery and deposition testimony that would defeat summary judgment, how it expects to obtain those facts, what effort was made to obtain those facts and why those efforts were unsuccessful. <u>See</u> <u>Gugary v. Winehouse</u>, 190 F.3d 37, 43 (2d Cir. 1999). Because the Court finds that plaintiff has failed to plead fraud with particularity, I grant defendant's motion for summary judgment as to Count Six of the Complaint.

## IV.   <u>Fraud and Misrepresentation Claims</u>

It is well established under New York law that where the plaintiff alleges that the defendant breached a duty that was owed to the plaintiff independent of any duty owed under the terms of the contract, such a claim may be allowed to proceed under a theory of fraud. <u>See</u> <u>Agency Development, Inc. v. MedAmerica Ins. Co. of New York</u>, 327 F.Supp.2d 199, 206 (W.D.N.Y., 2004)(Larimer, J.)("a simple breach of contract may not be transformed into a tort unless a legal duty independent of the contract itself has been

violated.")(quoting <u>Fleet Bank of New York v. Douglas-Guardian Warehouse Corp.</u>, 229 A.D.2d 962, 962, 645 N.Y.S.2d 384 (4th Dep't 1996). Moreover, a fraud claim may be pursued simultaneously with a contract claim where the plaintiff can demonstrate that the defendant made "a fraudulent misrepresentation collateral or extraneous to the contract" or where the plaintiff seeks "special damages that are caused by the misrepresentation and unrecoverable as contract damages." <u>See</u> <u>Solutia Inc. v. FMC Corp.</u>, 385 F.Supp.2d 324, 342 (S.D.N.Y. 2005)(quoting <u>Bridgestone/Firestone, Inc.</u>, 98 F.3d at 20 (2d Cir. 1996).

Here, Crown has not alleged a duty independent of Nudd's duties under the sales contracts. In addition, the Complaint alleges that the duty on which Crown's fraud claim is based arise from Nudd's design and fabrication of the monopoles. These duties stem from the obligations Nudd was hired to perform under the various sales contracts and not from any legal duty independent of the contract itself. Moreover, Crown has not made allegations that Nudd fraudulently induced Crown to enter into various sales contracts because Crown was not the original purchaser of the monopoles at issue. Further, the fraud allegations focus on Nudd's failure to inform Crown of alleged defects in the monopoles that Nudd is claimed to have learned long after Nudd's completion of performance under the sales contract with the original purchasers. Finally, Crown does not allege any special damages caused by the alleged fraud, which would not be recoverable under the contract

measure of damages. See Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996) (measure of damages for fraud under New York law is governed by out-of-pocket rule, which allows "indemnity for the actual pecuniary loss sustained as a direct result of the wrong," and bars "recovery of profits which would have been realized in the absence of fraud").

New York law explicitly recognizes three situations in which a party "has an independent duty to be truthful" to another party. Concorde Financial Corp v. Value line, Inc., 2004 WL 1687205, *6 (S.D.N.Y. July 28, 2004).  First, "where the party has made a partial or ambiguous statement" the party is obligated to make a complete disclosure of the truth on grounds that "once a party has undertaken to mention a relevant fact to the other party, it cannot give only half of the truth[.]" Concorde Financial, 2004 WL 1687205 at *6 (quoting Tomoka Re Holdings, Inc. v. Loughlin, 2004 WL 1118178 at *5 (S.D.N.Y. 2004). Second, a party may be obligated to disclose relevant information to another party where there exists a fiduciary or confidential relationship. Id. Finally, a party may be obligated to disclose relevant facts "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." Id.

In the instant case, Crown failed to establish the existence of any fiduciary duty, relationship of trust or confidence or independent statutory requirement that would create a duty on the part of Nudd to disclose the supposed defect in the monopoles.

20

There was no contractual relationship between the parties as it relates to the twenty-seven monopoles at issue in this motion, which were purchased by Crown on resale from various wireless carriers. Even if a contractual relationship existed, no duty on the part of Nudd would arise because parties to a commercial transaction are generally not fiduciaries and do not share a fiduciary relationship. See Restatement (Second) of Contracts 161(g) (1979); see also Kaufman v. Cohen, 307 A.D.2d 113, 119-120 (1st Dept. 2003).[13] Thus, summary judgment is granted as to all claims of fraud alleged in the Complaint.

### V.   Economic Loss Rule

Nudd contends that Crown's professional negligence claims should be dismissed on the theory that they are barred by New York's recognition of the "economic loss rule." See Def. Br. at 19. Specifically, Nudd asserts that Crown's Complaint alleges only economic damages as a result of the claims of professional negligence. See id. "It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." See Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389 (1987) (collecting cases). This doctrine, known as the economic loss rule, holds that "a negligence action seeking recovery for economic loss will not lie." See County of Suffolk v. LILCO, 728

---

[13]Crown does not allege that there was any relationship other than an arms' length buyer-seller relationship between two sophisticated parties.

F.2d 52, 62 (2d Cir.1984). The doctrine, if applicable, would bar Crown's claims for professional negligence/malpractice. <u>See</u>, <u>e.g.</u>, <u>Board of Educ. v. Sargent, Webster, Crenshaw & Folley</u>, 71 N.Y.2d 21 (1987) (absent some form of tort liability, claims seeking contribution and indemnification not available); <u>Clark-Fitzpatrick</u>, 70 N.Y.2d at 390 (dismissing negligence claims for lack of violation of legal duty independent of the contract).

The economic loss rule is predicated "on the recognition that '[r]elying solely on foreseeability to define the extent of liability [in cases involving economic loss], while generally effective, could result in some instances in liability so great that, as a matter of policy, courts would be reluctant to impose it.'" <u>See</u> <u>Hydro Investors, Inc. v. Trafalgar Power Inc.</u>, 227 F.3d 8, 16 (2d Cir.2000) (citing <u>5th Ave. Chocolatiere, Ltd. v. 540 Acquisition Co.</u>, 272 A.D.2d 23, 28 (1st Dep't 2000)). The rule operates at the intersection "between contract and tort ... [and has] therefore been the subject of confusing and sometimes contradictory rulings by the federal and New York courts." <u>See</u> <u>Joseph v. David M. Schwarz/Architectural Servs., P.C.</u>, 957 F.Supp. 1334, 1339-40 (S.D.N.Y.1997).

The leading decision by the New York Court of Appeals on this matter is <u>Sommer v. Federal Signal Corp.</u>, 79 N.Y.2d 540 (1992). <u>See</u> <u>Joseph</u>, 957 F.Supp. at 1341 (<u>Sommer</u> represents a "comprehensive

treatment of this issue by the New York Court of Appeals").[14] The Sommer court considered several factors that led it to reject the economic loss rule: "(1) that the fire alarm company's duty of care derived not only from contract but from the nature of its services; (2) that the fire alarm stations are franchised and regulated by the City; (3) that the fire alarm company served a significant public interest; (4) that the breach of the fire alarm company's duties could have catastrophic consequences; (5) the nature of the fire alarm company's relationship with the skyscraper owner; and (6) the sudden manner of the loss." See Hydro Investors, 227 F.3d at 17.

In Hydro Investors, the Second Circuit ruled that the economic loss rule would not bar a malpractice case brought by owners of a hydroelectric power plant against an engineering firm and an individual employed by the firm. The court noted that the damages involved were distinct from the underlying contractual agreement and that the parties' relationship was not exclusively "economic in nature." See id. Noting conflicting rulings surrounding the economic loss doctrine, the court ruled that "the better course is to recognize that the rule allows such recovery in the limited

---

[14]The Sommer court permitted the owner of a 42-story skyscraper in midtown Manhattan to bring breach-of-contract and negligence claims against a fire-alarm company that negligently handled an emergency service call. The Court of Appeals noted that "merely alleging that the breach of a contract duty arose from a lack of due care will not transform a simple breach of contract into a tort," (Sommer, 79 N.Y.2d at 551), but recognized a number of circumstances in which legal duties independent of contractual obligations could exist. For instance, cases involving "[p]rofessionals, common carriers and bailees" constitute circumstances in which "policy, not the parties' contract ... gives rise to a duty of due care." See id. at 551-52. Separate tort liability can also arise "'from a breach of a duty distinct from, or in addition to, the breach of contract.'" See id. at 551 (citations omitted).

class of cases involving liability for the violation of a professional duty.  To hold otherwise would in effect bar recovery in many types of malpractice actions." See id.

Crown alleges that it sought professional design, engineering, fabrication and construction services for monopoles from Nudd. See Pl. Br. at 28. Further Crown asserts that Nudd made certain representations as to the capacity of the monopoles based on its analyses and designs, and these representations were later found to be inaccurate. See id. Accordingly, Crown contends that it has been damaged by this negligent provision of professional services and that these services were essential to Crown's dealing with Nudd. See id. These claims involve more than a generalized "duty of due care" or mere "enforcement of the bargain." See Sommer, 79 N.Y.2d at 552.  The alleged professional negligence on the part of Nudd and its engineers has caused Crown to incur expenses. Consequently, this case, similar to Sommer and Hydro Investors, concerns "[p]rofessionals ... [who] may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties." See Sommer, 79 N.Y.2d at 551; see also Robinson Redevelopment Co. v. Anderson, 155 A.D.2d 755, 757 (3d Dep't 1989) ("We conclude that the contractual and professional relationship of plaintiff and defendants gave rise to two distinct wrongs, one contractual and the other grounded in professional malpractice, recoverable at law."); Commerce & Industry Ins. Co. v. Vulcraft, Inc., 1998 WL 823055, at *12 (S.D.N.Y. 1998) (rejecting

application of economic loss rule when claim "is in substance one for professional malpractice, and that obligation is distinct from any contract into which the parties may have entered"). Accordingly, Crown's professional negligence claim is not barred by the economic loss rule and summary judgment is denied as to this claim.[15]

## VI.   **Standing**

Defendant argues that Crown Castle USA, Inc., Castle GT Company, LLC and Crown Castle Atlantic, LLC have no ownership interest in the monopoles at issue in this litigation and hence can claim no injury in fact and thus lack standing to sue. See Def. Br. at 20. Crown contends that Crown Castle USA, Inc., Castle GT Company, LLC and Crown Castle Atlantic, LLC are named parties to the CSA and retained Nudd to perform services and thus are proper plaintiffs in this action. See Pl. Br. at 29. Crown's Interrogatory responses reveal that Crown Atlantic Company LLC is the current owner of all of the Crown monopoles, except for three, which are owned by Crown Communication Inc. See Crown's Answers to Underhill's Interrogatories at #2(i) attached as Ex. F to Marcus Aff. However, Crown's Interrogatory responses also indicate that with respect to the "monopoles Nudd manufactured for Crown pursuant

---

[15]With respect to Nudd's contention that Crown's professional negligence claims should be dismissed based on the three-year statute of limitations under CPLR 214(6), this Court has previously indicated that summary judgment on this issue is improper due to incomplete discovery. See Crown Castle USA Inc. v. Fred A. Nudd Corp., No. 05-CV-6163 (W.D.N.Y. March 1, 2007). Nudd has not provided new information to this Court to change the Court's decision. There remains outstanding discovery, including depositions that must be completed at this time. Upon completion of all discovery, the Court invites the parties to revisit this issue.

to the [CSA] ... discovery is ongoing[.]" <u>See</u> <u>id.</u> Thus, until discovery is completed on this narrow issue, the Court cannot grant summary judgment to Nudd.

## <u>CONCLUSION</u>

For the reasons stated above, Nudd's motion for partial summary judgment is granted in part and denied in part. The court therefore finds the following: (1) the four-year statute of limitations under U.C.C. §2-725 is applicable to the twenty-seven monopoles at issue; (2) Crown is not entitled to invoke the doctrine of equitable estoppel with respect to the tolling of the statute of limitations and thus summary judgment is granted with respect to the four-year statute of limitations and thus all claims regarding the twenty-seven monopoles are dismissed with prejudice; (3) summary judgment is granted with respect to dismissal of the fraud claims and thus, all claims of fraud as alleged in the complaint are dismissed with prejudice; (4) the economic loss rule does not bar Crown's professional negligence claim and thus summary judgment is denied as to this claim; and (5) until discovery is completed on the narrow issue of ownership interest of the monopoles, summary judgment is denied, without prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         January 16, 2008