UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CROWN CASTLE USA INC., CROWN
CASTLE GT COMPANY LLC, CROWN
CASTLE ATLANTIC LLC, CROWN
ATLANTIC COMPANY LLC and CROWN
COMMUNICATION INC.,

                    Plaintiffs,              05-CV-6163T

            v.                        **DECISION
and ORDER**

FRED A. NUDD CORPORATION, UNDERHILL
CONSULTING ENGINEERS, P.C., GEORGE R.
UNDERHILL, STEVEN F. CARINI and DEREK
R. HARTZELL,

                    Defendants.
_____

## INTRODUCTION

    Plaintiffs, Crown Castle USA Inc., Crown Castle GT Company LLC, Crown Castle Atlantic LLC, Crown Atlantic Company LLC and Crown Communication Inc., (collectively "Crown") move pursuant to Rule 60(b) of the Federal Rules of Civil Procedure for reconsideration of this Court's Decision and Order dated January 16, 2008, (the "January 16 Order") granting in part, and denying in part, defendant Fred A. Nudd Corporation's ("Nudd") motion for partial summary judgment. In addition, Crown moves pursuant to Rule 59(e) of the Federal Rules of Civil Procedure for an order to alter or amend the judgment on Crown's equitable estoppel and fraud and misrepresentation claims which were dismissed by the January 16 Order.

    Crown argues that based on the evidence revealed during discovery, Crown seeks reconsideration of the portions of the

January 16 Order that hold: 1) that Crown cannot invoke the doctrine of equitable estoppel to toll the statute of limitations and 2) that Crown's fraud and misrepresentation claims are dismissed as it relates to the thirty-nine monopoles at issue in this litigation. Alternatively, Crown seeks leave to amend its Complaint to plead its fraud and misrepresentation claims with greater specificity and to plead facts to cure the deficiencies noted in the January 16 Order.[1]

Nudd contends that Crown fails to raise new evidence as required for a reconsideration motion. Nudd further argues that Crown simply adds affidavits of those witnesses Crown had access to well before the January 16 Order was entered and that Crown even admits that its alleged new evidence was disclosed at depositions that occurred in December 2007. Moreover, Nudd argues that Crown cannot be granted leave to amend the complaint since the January 16 Order has not been set aside or vacated pursuant to Rule 59(e) or 60(b).

For the reasons set forth below, Crown's motion to alter or amend under Rule 59(e) is granted. Summary Judgment as it relates to the equitable estoppel and fraud and misrepresentation claims are denied since there are material issues of fact in dispute.

---

[1] By letter dated July 18, 2008, Crown informed this Court that it formally filed a Motion for Leave to File an Amended Complaint as a result of various discovery related disputes concerning the scope of Crown's claims and discovery requests. Pursuant to the December 21, 2005 Referral Order, Magistrate Judge Payson has issued a Motion Scheduling Order relating to Crown's motion for leave to file an amended complaint. Thus, this Court will not consider that portion of Crown's requested relief.

Accordingly, the Court's January 16 Order is partially vacated and superseded in part by the following decision.

**BACKGROUND**

The background of this case is set forth in the Court's January 16 Order. See Crown Castle USA Inc. et al. v. Fred A. Nudd Corp., et al., 2008 WL 163685 (W.D.N.Y.2008). Familiarity with that decision is assumed. Facts and prior proceedings relevant to the instant motion are set forth below.

**I.   Discovery**

Nudd filed a motion for partial summary judgment on March 1, 2007. When Crown filed its opposition papers to Nudd's motion on April 9, 2007, no depositions had been taken and Nudd had not provided certain documents. On May 3, 2007, Judge Payson granted Crown's second motion to compel[2] and ordered Nudd to produce exhibits to deposition transcripts and pleadings from the SBA litigation. Crown received some of the documents related to the SBA litigation in June 2007 from Nudd. The documents indicated that Nudd admitted to other customers, not Crown, that Nudd's monopole design program was defective, that Nudd monopoles would not meet the TIA/EIA-222 Structural Standards for Steel Antenna Towers and

---

[2]Judge Payson ordered Nudd to produce the pleadings, deposition transcripts and discovery requests and responses from an action filed in Wayne County, New York by SBA Network Services, Inc. (the "SBA litigation") on December 6, 2006. SBA is another Nudd customer that sued Nudd in state court prior to this Federal Court litigation. Nudd produced transcripts and certain pleadings but did not include exhibits in the production. Accordingly, Crown filed its second motion to compel Nudd to produce the complete documents ordered by Judge Payson for production. Judge Payson directed the parties to postpone all previously scheduled depositions until the discovery motions were resolved. Oral argument on the second motion to compel was scheduled for May 3, 2007.

Antenna Supporting Structures ("TIA/EIA Standard") specified in Nudd's design documents. In addition the Nudd monopoles may need to be modified to support their design loads. By order dated September 27, 2007, Judge Payson directed the parties to submit a joint deposition schedule by October 26, 2007, and set the close of discovery on February 15, 2008.

Crown contends that by November 2007 it was finally able to obtain from SBA's counsel a complete set of the documents introduced as deposition exhibits in the SBA litigation. The exhibits contain evidence that Nudd knew of the design defect and communicated with certain customers, not Crown, regarding the defect. On December 18 and 19, 2007, Tom Nudd, President and Lowell Nudd, Vice President of Nudd testified on behalf of the company pursuant to a deposition notice issued under Fed.R.Civ.P. 30(b)(6). Moreover, Andrew Bazinet of Crown was deposed in December 2007.

## II.   **Affidavits**

### A.   **Affidavit of Clark Cogan**

Clark Cogan ("Cogan") is a former Nudd Sales Manager who is now the President of Tower Solutions LLC. Cogan Aff., ¶ 1. According to Cogan, Nudd engineers, Patrick Botimer ("Botimer") and Derrick Hartzell reviewed the Nudd design program in 2001 and concluded that, as a result of a design flaw in the software developed by Nudd, the designs and monopoles were defective. Id.,

4

¶ 3.[3] The engineers also informed Cogan in 2001 that the design flaw meant that the monopoles would hold 30-40% less capacity than the original design capacity for the monopoles. Id. In this regard, Tom Nudd authorized and directed Cogan to communicate only with Nudd customers that had discovered the design flaw on their own. Id., ¶ 4. Tom Nudd instructed Cogan not to communicate to customers that had not discovered the monopole deficiencies on their own. Id. Cogan states that while it was originally the intent of Nudd to repair some of the defective monopoles, the scope of the problem and the financial resources necessary to correct the problem became overwhelming. Id., ¶ 5. According to Cogan, when he was overly forthright and honest in communicating with customers regarding Nudd's design flaws, he was relieved of his responsibility. Id. Thus, Nudd decided not to inform its customers that its monopoles were defective and made the decision not to provide customers with information related to the defect. Id., ¶ 6.

Cogan states that Crown relied on Nudd's expertise in the area of analysis of communication monopoles. Id., ¶ 7. According to Cogan, Crown utilized Nudd for engineering services at least until he left in 2002. Id. During this time, Crown relied on Nudd's knowledge of the monopoles designed by Nudd and relied on Nudd's experience in the area of communications monopole engineering. Id.

---

[3]Tom Nudd was a participant in these discussions and in the conclusion that a design flaw existed in the Nudd design program. Id.

In addition, Nudd did not inform Crown that Crown-owned monopoles were designed using Nudd's flawed software. Id., ¶ 8. Cogan states that it was misleading for Nudd to conceal from Crown that the software contained a design flaw. Id.

Nudd argues that the submission of Cogan's affidavit is not supportive of Crown's motion since it merely recites facts that do not support a claim for fraud, as this Court held in its January 16 Order. See Nudd's Br. at 7-8. Moreover, Nudd contends that Cogan was known to Crown at the time of the original motion and plaintiffs cited to him in their original papers. See id. at 8. Nudd states that Cogan's testimony in prior state court cases and his prospective testimony in this case has been long discussed. See id. Crown counters by arguing that the extent of Cogan's involvement and knowledge began to be revealed in June 2007 and November 2007 when Crown was able to obtain documents constituting some of Nudd's communications with its customers. While Cogan was mentioned because of his involvement in the prior state court cases against Nudd, Crown was only able to communicate with Cogan in January 2008. It is significant to note that Interrogatory No. 7 of Crown's First Set of Interrogatories directed to Nudd requested Nudd to identify "each Person with knowledge concerning the Crown Monopoles or any of your defenses related to the claims raised by Crown in this matter." In response, Nudd identified certain Nudd

6

employees, but failed to identify Cogan in its discovery responses or provide Crown with Cogan's contact information.

**B.    Affidavit of Patrick Botimer dated January 29, 2008**

Patrick Botimer ("Botimer") is a former Nudd engineer who is presently the Director of Engineering Operations for Armortower, Inc. See Botimer Aff., ¶ 1. Botimer states that in June 2001, Sprint Sites USA ("Sprint"), a customer of Nudd, advised him that Sprint believed that Nudd's original design monopole did not meet the design specifications. Id., ¶ 6. By August 2001, Nudd received complaints from several other customers including SBA and American Tower Corporation ("American Tower") advising Nudd of their view that Nudd incorrectly calculated the wind loading on its monopoles under the TIA/EIA-222 standard such that the monopoles were overstressed. Id., ¶ 7. It was Botimer's understanding that Nudd made the decision not to inform customers concerning the defective monopoles and decided not to provide the customers with information related to the defect. Id., ¶ 8. Throughout Botimer's employment at Nudd from 1987 to 2006, Nudd did not utilize different methodologies in the design of monopoles for different customers. Id., ¶ 9. However, in mid-2001, Nudd changed the formulas in its monopole design software to apply a 1.69 gust response factor when calculating wind load on the antennas to be located at specific elevations on the monopoles. Id., ¶ 10.

According to Botimer, all monopoles designed and fabricated by Nudd before mid-2001 (none of which incorporated a 1.69 gust response factor in calculating wind loads on the antennas on the monopoles) did not comply with the TIA/EIA-222 standard. Id., ¶ 13. Nudd's change of its design calculations to incorporate the gust response factor was in response to customer complaints that Nudd did not properly calculate wind loading on antennas pursuant to the TIA/EIA-222 standard for monopoles designed and fabricated by Nudd prior to mid-2001. Id., ¶ 10. Botimer states that a Nudd monopole that was designed and fabricated before the gust response factor was incorporated into the antenna loading calculations would almost certainly be overstressed if the original design loads were installed on the monopole. Id., ¶ 14. However, it would be necessary for an engineer to perform the calculations using the original design loads to be sure that the monopole was overstressed. Id.

Botimer indicates that during 2001 and 2002, Crown requested Nudd to perform a structural analysis of Nudd monopoles in Crown's portfolio to determine whether the monopoles were adequate to support additional proposed antenna loading. Id., ¶ 16. It was typical for Crown to ask Nudd to evaluate whether the monopole was adequate to support additional proposed loading. Id., ¶ 21. The proposed loading may or may not have been less than the original design loading. Id. However, Botimer was not aware of a

8

circumstance in which Crown asked Nudd to analyze the capability of a particular Nudd monopole to support its original design loading. Id. Crown provided Botimer with certain documents, which are attached as exhibits A through E to Botimer's affidavit. Botimer states that exhibits B, C, and D do not advise Crown whether the monopoles are overstressed as originally designed or if they are capable of supporting their original design loads. Id., ¶ 22.

Furthermore, according to Botimer exhibits B, C and D are misleading to Crown because they do not disclose to Crown that Nudd's wind loading calculations prior to mid-2001 did not incorporate a 1.69 gust response factor in the antenna wind loading calculations or that the monopoles may not be capable of supporting the original design loads. Id., ¶ 23. In addition, the documents in the exhibits are misleading to Crown because they do not disclose that Nudd's calculations after the middle of 2001 incorporate the use of a 1.69 gust response factor in the antenna wind loading calculations or that Nudd was upgrading other Nudd customer monopoles at no charge to the customer because of Nudd's failure to incorporate the gust response factor before mid-2001. Id. In May 2003, Crown requested Nudd to perform a structural analysis of the Walworth, NY monopole to determine whether it could support additional proposed loading. Id., ¶ 25. Nudd prepared a report for Crown concluding that the Walworth monopole was overloaded to

support the design loading.  Id., ¶ 26. Nudd proposed the addition of base plate flange gussets to reinforce the base plate. Id.

Botimer states that until September 2003, Crown relied upon Nudd as Crown's structural engineer expert to perform most of its monopole structural analyses that Crown required for its Nudd designed monopoles in New York. Id., ¶ 33. Botimer was not aware of any communication from Nudd to Crown concerning the following: that the Crown-owned monopoles designed by Nudd prior to mid-2001 were not in compliance with the TIA-EIA-222 standard; that Nudd incorporated the additional 1.69 gust response factor in the monopole design calculations sometime in 2001; or that Nudd had agreements with its other customers to repair the monopoles at no charge to the customer. Id., ¶ 29. Further, Botimer was not aware of any facts to indicate that Nudd advised Crown that Nudd incorporated an additional 1.69 gust response factor in its monopole design calculations sometime in 2001 or that the Nudd monopoles in Crown's portfolio might not be able to support the original design loading. Id., ¶ 30. Finally, Botimer states that during his employment at Nudd, to his knowledge, Nudd did not inform Crown that Crown-owned monopoles were designed using Nudd's flawed software. Id., ¶ 31.

Nudd argues that nothing in Botimer's January 29, 2008 affidavit adds to Crown's original opposition papers. See Nudd Br. at 7. In addition, Nudd provides another affidavit by Botimer dated

May 17, 2008 wherein he notes that he was first contacted by Crown's counsel in November 2007, two months before the January 16 Order was filed. See id. Crown counters by stating that Nudd provided Botimer's contact information to Crown for the first time on October 18, 2007. See Barley Reply Aff. ¶ 8. Crown's counsel initially contacted Botimer in November, 2007 to discuss scheduling his deposition. See id. ¶ 14. In January 2008, Crown's counsel contacted Botimer to determine what relevant information he possessed that might be pertinent to Crown's claims. See id.

C.   **Affidavit of Patrick Botimer dated May 17, 2008**

In Botimer's second affidavit, he essentially states that he discovered that several statements he made in the prior affidavit are incorrect and inconsistent with statements made in his January 11, 2005 deposition.[4] See Botimer May 17, 2008 Aff., ¶ 13. Accordingly, Botimer provided a second affidavit to correct the first one. Botimer states that his statement in paragraph 8 was inaccurate and clarifies that any decision regarding differing opinions of code interpretation and its application to monopole design was strictly handled by management, which did not include him. Id., ¶ 14. In Botimer's original affidavit he stated that Nudd did not utilize different methodologies in the design of monopoles for different customers. See January 28 Aff., ¶ 9. However, Botimer

---

[4]Botimer was previously deposed in connection with the SBA litigation brought in state court.

11

now states that while a template set of calculation was utilized as a starting configuration when designing a monopole for customers, modifications to the pole geometry calculations, antenna loading calculations, and wind characteristics were made to match the customer's need for a specific site. See May 17, 2008 Aff., ¶ 15. Further, Botimer now states that it is his understanding that the purpose for changing the formulas in its monopole design software to apply a 1.69 gust response as explained in his original paragraph 10, was to maintain customer satisfaction and not because of the belief that the earlier calculation was noncompliant with the TIA/EIA-222 standard. Id., ¶ 16.

With respect to paragraph 13 where Botimer originally stated that all monopoles designed and fabricated by Nudd before mid-2001 did not comply with the TIA/EIA-222 standard, he now states that Nudd did comply with the TIA/EIA-222 standard as the standard *was understood by Nudd at that time.* Id., ¶ 18 (emphasis added). In addition, Botimer corrects his statement in paragraph 14[5] and states that the sufficiency of the monopole to handle stress varies depending on the specific antenna attached to it including the quality and elevation of the antenna. Id., ¶ 20. Regarding paragraphs 20 through 25 of Botimer's original affidavit, he notes

---

[5]The original affidavit states "A Nudd monopole designed and fabricated before the gust response factor was incorporated into the antenna loading calculations would almost certainly be perceived as overstressed if the original design loads were installed on the monopole." See ¶ 14.

that exhibits B through E all show the application of the 1.69 gust response factor in the design. Id., ¶ 21.

Furthermore, as it relates to paragraph 26 of his original affidavit, Botimer notes that Nudd proposed the addition of structural reinforcement based on the perception that the gust response factor had to be added to the antenna wind loads. Id., ¶ 22. In addition, Botimer now states that he has never had any information of any concerted effort on the part of Nudd to conceal its reasoning in applying the gust response factor in its monopole calculations. Id., ¶ 23. Moreover, Botimer states that it is his understanding now that Nudd believed the pre-2001 Crown-owned monopoles were in compliance with the TIA-EIA-222 standard. Id., ¶ 24. He also indicates that the software was not flawed and that the interpretation of the TIA/EIA-222 standard evolved. Id., ¶ 25. However, he states that this does not mean that every structure designed under the earlier interpretation is flawed due to the software. Id.

## DISCUSSION

### I.   Rule 60(b) Standard

Rule 60(b) sets forth the following six grounds upon which a court can grant relief from a judgment:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether

> heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b). Crown argues that it is entitled to relief under Rule 60(b)(2) because Crown obtained evidence during discovery that is highly relevant to the Court's January 16 Order and that warrants a different result. See Crown Br. at 6.

As a threshold matter, Crown's Rule 60(b) motion is denied because the challenged January 16 Order is not a final order within the meaning of the rule. See Transaero, Inc. v. La Fuerza Aerea Boliviana, 99 F.3d 538, 541 (2d Cir.1996); Middle Market Financial Corp. v. D'Orazio, 2000 WL 798634 at *2 (S.D.N.Y. 2000) (Rule 60(b) applies only to "final" judgments);[6] Alvarez v. American Airlines, Inc., 2000 WL 145746 (S.D.N.Y. 2000) (decision granting in part, and denying in part, defendant's motion for summary judgment is an interlocutory, not final order, and thus, Rule 60(b) is inapplicable); D.A. Elia Constr. Corp. v USF&G Co., 1997 WL 215526 at *2 (W.D.N.Y. 1997); Wanamaker v. Columbian Rope Co., 907 F. Supp. 522 (N.D.N.Y. 1995) (district court decision dismissing some, but not all of plaintiff's claims, was interlocutory order and not

---

[6]A judgment is final such that it may be appealed if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." See Catlin v. United States, 324 U.S. 229, 233 (1945).

within ambit of Rule 60(b)). Thus, Crown erred by moving for reconsideration of an interlocutory order pursuant to Rule 60(b)(2). The Court will consider Crown's motion under Rule 59(e).[7]

## II. **Rule 59(e) Standard**

Reconsideration of a court's judgment pursuant to 59(e) is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." See USA Certified Merchants, LLC v. Koebel, 273 F.Supp.2d 501, 503 (S.D.N.Y.2003) (citations omitted). "A court is justified in reconsidering its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent obvious injustice." See Atl. States Legal Found., Inc. v. Karg Bros., Inc., 841 F.Supp. 51, 53 (N.D.N.Y.1993) (quoting Larsen v. Ortega, 816 F.Supp. 97, 114 (D.Conn.1992)); see also Oxford House, Inc. v. City of Albany, 155 F.R.D. 409, 410 (N.D.N.Y.1994); Fiore v. MacDonald's Corp., 1996 WL 331090 (E.D.N.Y. 1996), citing Doe v. New York City Dep't of Soc. Svcs., 709 F.2d 782, 789 (2nd Cir.) cert. denied 464 U.S. 864 (1983).

---

[7]See Patel v. Lutheran Medical Center, Inc., 775 F.Supp. 592, 596 (E.D.N.Y.1991) ("Whether moving on the basis of presentation of new evidence under Rule 59(e) or Rule 60(b)(2), the standard for 'newly discovered evidence' is the same.") (citing C. WRIGHT AND A. MILLER, 11 FEDERAL PRACTICE AND PROCEDURE 182, § 2859 (1973 ed.) ("The same standard applies to motions on the ground of newly discovered evidence whether they are made under Rule 59 or Rule 60(b)(2), and decisions construing Rule 59 in this context are authoritative in construing Rule 60(b)(2).")).

"The standard for granting a Rule 59(e) motion is strict and reconsideration is generally denied as Rule 59(e) motion is not a vehicle for reargument or asserting arguments that could and should have been made before judgment issued." See Weiss v. City of New York, 2003 WL 21414309, at *1 (S.D.N.Y. 2003) (internal quotation marks and citations omitted); see also 12 MOORE'S FEDERAL PRACTICE § 59.30[6]; North River Ins. Co. v Philadelphia Reinsurance Corp., 63 F.3d 160, 165 (2nd Cir. 1995), cert. denied 116 S.Ct. 1289 (1996)["A court should be 'loath' to revisit an earlier decision in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" (citations omitted)].

When the basis of a 59(e) motion is the discovery of new evidence, the moving party bears the burden in establishing that the new evidence is "truly newly discovered or ... could not have been found by due diligence." See United States v. Potamkin Cadillac Corp., 697 F.2d 491, 493 (2d Cir.1983) (cited in Atl. States Legal Found., 841 F.Supp. at 56); see also Patel, 775 F.Supp. at 596. In this regard, evidence which was "in the possession of the party before the judgment was rendered ... is not newly discovered and does not entitle him to relief." See id. (citing, inter alia, Potamkin, 697 F.2d at 493); see also Oxford House, 155 F.R.D. at 410 ("Rule 59(e) motions are not vehicles for bringing before the court theories or arguments that were not

16

advanced earlier. Nor may the motion present evidence which was available but not offered at the original ... trial.") (citation omitted).

The decision whether to grant a motion for reconsideration rests in the sound discretion of the district court. See McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983); see also Campbell v. Poole, 2008 WL 2561998 at *1 (W.D.N.Y. 2008). This Court finds that reconsideration of its January 16 Order is appropriate and grants Crown's motion for reconsideration. Crown's reconsideration motion cites to new evidence relevant to the Court's prior decision. Thus, both the interests of justice and judicial economy compel the Court to invoke its discretionary power to grant Crown's motion for reconsideration. The Court will reconsider its prior decision in light of the new evidence presented by Crown in support of its motion for reconsideration.

Nudd argues that reconsideration should be denied because Crown fails to raise new evidence as required for reconsideration and Crown's evidence is untimely and thus does not meet the requirements of Federal Rules 59 and 60. See Nudd Br. at 3-4 and 7-8. However, in support of its motion for reconsideration, Crown presents evidence which was not fully developed at the summary judgment stage. Nudd has also been given a full and fair opportunity to respond to Crown's motion and is not prejudiced by

this Court's reconsideration of the January 16 Order. The merits of Crown's remaining claims are discussed below.

### III. **Equitable Estoppel**

Crown asserts that based on the new evidence the doctrine of equitable estoppel should be applied to preclude Nudd's interpretation of the statute of limitations defense. See Crown's Br. at 16-18. Crown states that the new evidence shows that Nudd possessed superior knowledge to Crown, misrepresented the condition of its monopoles to Crown and accordingly Nudd should be estopped from pleading the statute of limitations as to Crown's claims. See id. at 16. Under New York law equitable estoppel may be applied where a plaintiff has been induced by fraud, misrepresentation or deception to refrain from filing a timely action. See Simcuski v. Saeli, 44 N.Y.2d 442, (1978); see also Zumpanu v. Quinn, 6 N.Y. 3d 666, 674 (2006).

Crown argues that the January 16 Order held that Crown was not entitled to assert the affirmative defense of estoppel based on the fact that mere silence or failure to disclose the wrongdoing is insufficient to support estoppel where the defendant has no duty to disclose such information. See Crown Br. at 16. Crown argues that New York law states that fiduciary relationship is not a requirement for equitable estoppel to be applicable where there have been actual misrepresentations. See Kaufman v. Cohen, 307 A.D.2d 113, 122 (1st Dept. 2003). Further, Crown contends that the

new evidence consisting of Cogan's affidavit and Botimer's January 2008 affidavit demonstrate that Nudd was not merely aware and silent as to the defects to the monopoles, but that Nudd made the decision not to inform Crown of the defective condition with the hope that the design flaw could be addressed without the customer's knowledge. See Cogan Aff., ¶¶ 5-6. Moreover, Cogan states that Crown relied on Nudd's expertise in the area of analysis of communication monopoles. Id., ¶ 7. According to Cogan, Crown relied on Nudd's knowledge of the monopoles designed by Nudd and relied on Nudd's experience in the area of communications monopole engineering. Id. Crown contends that this new evidence shows that Nudd had superior knowledge. Accordingly, Crown argues that it should be allowed to assert the doctrine of equitable estoppel.

The doctrine of equitable estoppel may be invoked where the enforcement of the rights of one party would work an injustice upon the other due to its justifiable reliance upon the initial party's words or conduct. See In re Ionosphere Clubs, Inc., 85 F.3d 992, 999 (2d Cir.1996). While Crown's invocations of the equitable estoppel doctrine is compelling based on the new evidence presented, the Court defers to the well-settled pronouncement that whether or not equitable estoppel applies in a given case is ultimately a question of fact, which cannot be resolved, at least not in the affirmative, on a motion for summary judgment. See Vigliotti v. N. Shore Univ. Hosp., 24 A.D.3d 752, 755 (2d Dept.

19

2005); Owen v. MacKinnon, 6 A.D.3d 684, 686 (2d Dept. 2004); see also Kosakow v. New Rochelle Radiology Assoc., 274 F.3d 706, 725 (2d Cir. 2001); Bennett v. United States Lines, Inc., 64 F.3d 62, 65 (2d Cir. 1995).

Under these circumstances, specifically Botimer's conflicting affidavits, there are disputed issues regarding the following facts: whether Nudd had superior knowledge concerning the alleged defective monopoles, whether Nudd misrepresented the condition of its monopoles to Crown when certain problems were occurring with other customers; whether Nudd made the decision not to inform customers, including Crown, concerning the defective monopoles and whether Nudd decided not to provide the customers with information related to the defect; whether Nudd utilized different methodologies in the design of monopoles for different customers; whether there was a design flaw in the software developed by Nudd or whether Nudd made modifications to the pole geometry calculations, antenna loading calculations, and wind characteristics to match the customer's need for a specific site; whether Nudd's purpose for changing the formulas in its monopole design software to apply a 1.69 gust response was to maintain customer satisfaction or because the earlier calculation was noncompliant with the TIA/EIA-222 standard; whether all monopoles designed by Nudd before mid-2001 complied with the TIA/EIA-222 standard. These factual questions preclude this Court from

determining whether Nudd can be equitably estopped from asserting the statute of limitations as a defense. See Simcuski, 44 N.Y.2d at 442; DeMatteo v. Sanford A. Ratzan, M.D., P.C., 225 A.D.2d 579 (2d Dept. 1996); Harkin v. Culleton, 156 A.D.2d 19 (1st Dept. 1990); Szajna v. Rand, 131 A.D.2d 840 (2d Dept. 1987).

The new facts presented establish questions of fact that prevent the grant of partial summary judgment on the equitable estoppel claim.

### IV.   Fraud and Misrepresentation Claims

Crown contends that based on the new facts presented, it has properly asserted a fraud and misrepresentation claim against Nudd because Nudd breached a duty owed to Crown independent of any duty owed under the contracts for the monopoles at issue. See Crown's Br. at 19. Crown states that the new facts demonstrate that Nudd failed to indicate that its monopoles were overstressed despite the fact that Nudd knew its design program contained a software error causing all monopoles designed by Nudd prior to mid-2001 to hold 30 to 40% less capacity than the original design capacity. See Cogan Aff. ¶ 3. Despite the fact that Nudd knew that all the monopoles it designed before mid-2001 were defective due to a software error, it still represented to Crown that the base plate upgrade was required to lead Crown to believe that the monopoles did not have a defect. See id., ¶ 7. According to Crown, these misrepresentations imposed a duty upon Nudd to provide complete information to Crown

concerning the structural integrity of the monopoles. See Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

Further, Crown claims that Nudd possessed superior knowledge that was not readily available to Crown. In addition, Nudd knew that Crown was relying on the information provided by Nudd. See Brass, 987 F.2d at 150 (where a party possesses superior knowledge that is not readily available to the other and the party knows that the other is acting on the basis of mistaken knowledge, a duty to disclose exists); Aaron Fere & Sons Ltd. v. Chase Manhattan Bank, N.A., 731 F.2d 112, 123 (2d Cir. 1984); see also Cogan Aff., ¶ 7, Botimer January Aff., ¶ 33 (Crown relies on both affidavits in support for its proposition that Nudd possessed superior knowledge and knew that Crown was acting in reliance upon information provided by Nudd and which in fact Nudd knew to be inaccurate information).

The Court finds that based on the new facts provided by Crown, there are material questions of fact that preclude the granting of summary judgment as to Crown's claim of fraud and misrepresentation. Crown claims that Nudd's former employees Cogan and Botimer relied on Nudd's knowledge of the monopoles designed by Nudd and relied on Nudd's experience in the area of communications monopole engineering. See Cogan Aff., ¶ 7, Botimer January Aff., ¶ 33. However, as discussed above, there are disputed questions of fact regarding, among other things, whether Nudd actually had

22

superior knowledge concerning the alleged defective monopoles and whether Nudd misrepresented the condition of its monopoles to Crown when certain problems were occurring with monopoles provided to other customers. Thus, Nudd's partial summary judgment motion as to Crown's fraud and misrepresentation claim is denied.

## CONCLUSION

For the reasons stated above, Crown's motion for reconsideration is granted to the extent indicated in this Opinion. To the extent that the Decision and Order of January 16, 2008 is inconsistent with this Decision and Order, it is hereby modified.

**ALL OF THE ABOVE IS SO ORDERED.**

                                s/Michael A. Telesca
                                MICHAEL A. TELESCA
                             United States District Judge

Dated:    Rochester, New York
          August 13, 2008