UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CROWN CASTLE USA INC., CROWN
CASTLE GT COMPANY LLC, CROWN
CASTLE ATLANTIC LLC, CROWN
ATLANTIC COMPANY LLC and CROWN
COMMUNICATION INC.,

                              Plaintiffs,                05-CV-6163T

                v.                                 **DECISION**
                                                       **and ORDER**

FRED A. NUDD CORPORATION, UNDERHILL
CONSULTING ENGINEERS, P.C., GEORGE R.
UNDERHILL, STEVEN F. CARINI and DEREK
R. HARTZELL,

                              Defendants.
_____

## <u>INTRODUCTION</u>

Crown Castle USA Inc., Crown Castle GT Company LLC, Crown Castle Atlantic LLC, Crown Atlantic Company LLC and Crown Communication Inc., (collectively "Crown") brought this action against Fred A. Nudd Corporation ("Nudd"), Underhill Consulting Engineers, P.C., George R. Underhill (collectively ("Underhill"), Steven F. Carini ("Carini") and Derek R. Hartzell (collectively "defendants") alleging breach of contract, breach of express warranty, breach of implied warranty and misrepresentation as well as professional negligence against defendants. Specifically, Crown's complaint contains one cause of action for professional negligence against Underhill alleging a failure to "exercise the requisite professional skill" in the review of the design documents for several monopoles at issue.

Underhill moves for summary judgment[1] seeking dismissal of Crown's professional negligence claim regarding thirty-seven of the thirty-nine monopoles at issue in this case. Underhill claims that it seeks summary judgment with regard to twenty-two monopoles[2] for which it provided no professional services and on that basis Underhill had absolutely no relationship to these twenty-two monopoles.[3] Moreover, summary judgment is sought regarding the remaining fifteen monopoles[4] since any professional services Underhill may have provided were completed on a date more than three years before the commencement of this action on April 8, 2005 and thus barred by the statute of limitations under New York's CPLR 214(6). In addition, Underhill moves for summary judgment dismissing Carini's cross-claim for contribution and indemnity.

Crown opposes Underhill's motion, and contends that Underhill disregards fundamental factual developments in this case that should resolve the statute of limitations defense in Crown's favor. In addition, Crown argues that Underhill performed negligent professional engineering services concerning Crown monopoles until

---

[1] Underhill previously filed a motion for summary judgment, which the Court denied as premature since discovery was still ongoing. See Crown Castle USA Inc. et al. v. Fred A. Nudd Corp., et al., 2007 WL 700901 (W.D.N.Y. March 1, 2007) ("March 2007 Order"). However, in the Court's January 16, 2008 Decision and Order ("Jan. 2008 Order"), the Court stated that the parties may revisit the issue of the applicability of the statute of limitations to Crown's claims upon the completion of discovery. See Crown Castle USA Inc. et al. v. Fred A. Nudd Corp., et al., 2008 WL 163685 (W.D.N.Y.January 16, 2008, n.15).

[2] The twenty-two monopoles include: 801344, 806677, 816552, 816574, 816586, 816603, 816607, 816633, 816638, 816644, 816655, 816665, 816666, 816676, 816679, 816686, 816697, 816701, 816716, 816734, 816742 and 851875. See Affidavit of George Underhill ("Underhill Aff."), at Ex. 7A.

[3] Underhill claims that an engineer other than Underhill is identified as having provided professional services for the twenty-two monopoles as specifically identified in the Underhill Aff., at Ex. 7A.

[4] Underhill concedes that it has provided services for ten of the monopoles. However, no engineer has been identified as having provided professional services for the remaining monopoles in question.

at least 2003. Crown claims that this lawsuit was filed within three years of the completion of the negligent professional services. Further, as it relates to work performed by Underhill more than three years before the filing of the lawsuit, Crown contends that a continuing professional relationship existed until at least 2003 in which Underhill undertook to rectify the alleged malpractice, which tolls the statute of limitations. Carini has not opposed Underhill's motion.

For the reasons set forth in more detail below, Underhill's motion for summary judgment seeking dismissal with respect to Crown's professional negligence claim is granted in part and denied in part and Underhill's motion for summary judgment seeking dismissal of Carini's cross-claims for contribution and indemnity is granted.

## BACKGROUND

This is Underhill's second motion for summary judgment and the third motion for summary judgment filed in this case. Accordingly, the Court assumes familiarity with the procedural and factual background set forth in its prior decisions in this matter. See Crown Castle USA Inc. et al. v. Fred A. Nudd Corp., et al., 2007 WL 700901 (W.D.N.Y.2007); Crown Castle USA Inc. et al. v. Fred A. Nudd Corp., et al., 2008 WL 163685 (W.D.N.Y.2008). Thus, the Court will not repeat all the facts and prior proceedings and will only

address the most pertinent information as it relates to this summary judgment motion.

**A.    Monopoles 801343, 801719, 802128, 804636, 851860, 868142, 800629 and 801511**

Underhill argues that its professional services were limited to reviewing and then stamping the design documents for several of the monopoles[5] at issue. <u>See</u> Underhill's Amended Statement of Facts ("UASOF"), ¶4. Further, Underhill contends that its professional services with regard to the monopoles in question were completed no later than the date the design documents were stamped. It is undisputed that Underhill was retained by Nudd to review and seal the original drawings and calculations for eight monopoles listed below for the following dates:

| | | | |
|---|---|---|---|
| 801343 | 7/16/2001 | 851860 | 11/01/1999 |
| 801719 | 2/01/2001 | 868142 | 4/09/2001 |
| 802128 | 2/21/2001 | 800629 | 8/01/1999 |
| 804636 | 10/--/2001 | 801511 | 11/15/1999 |

<u>See</u> AUSOF., ¶4, Barley Aff., ¶7.[6] With respect to monopoles 851860, 800629, 801511 and 868142, Nudd sold these monopoles to entities

---

[5]Crown's claims involve thirty-nine (39) monopoles. The 39 monopoles are identified by "BUN" numbers on a chart that Crown incorporated by reference in their answers to Underhill's Interrogatories. <u>See also</u> Underhill Aff., Ex. 7A. It is alleged by Crown that Nudd designed, fabricated and/or constructed twelve (12) monopoles directly for Crown. <u>See</u> Affidavit of Kevin Barley("Barley Aff."), ¶3. In addition, Crown alleges that it acquired the rights and title to twenty-seven (27) monopoles from other entities that were originally designed, fabricated and/or constructed by Nudd. <u>Id.</u> at ¶4. Crown contends that all 39 monopoles were defectively designed and/or constructed.

[6]Crown claims that Underhill reviewed and approved the original drawings related to the eight (8) monopoles and accordingly provided negligent services in approving faulty monopole drawings for these 8 monopoles before the construction stage.

other than Crown, e.g. Verizon or Summit Technical Group.[7] <u>See</u> March 1, 2007 Affidavit of Lowell Nudd ("March 2007 Nudd Aff."), ¶9 at Doc. # 62. Subsequently, these entities sold the monopoles to Crown. In addition, Underhill claims that it's review and sealing of each of the original drawings and calculations for the eights monopoles was done on a pole by pole basis. <u>See</u> AUSOF, ¶5. Underhill further claims that its services relating to the 8 monopoles ceased when the original drawings and calculations were reviewed and sealed. <u>See</u> <u>id.</u>, ¶9. In this regard, Underhill contends that it did not continuously provide additional services concerning any of the 8 monopoles after the date of its original review and sealing.[8] <u>See</u> <u>id.</u>, ¶11.

In contrast, Crown claims that from 2001 until at least 2003, Underhill was retained by Nudd to evaluate the defective monopole design relating to Nudd's entire monopole portfolio. <u>See</u> Crown's Statement of Material Facts in Dispute ("CSMF"), ¶8. According to Crown, Nudd hired Underhill to evaluate all monopole towers designed by Nudd which did not incorporate a gust response factor.

---

[7]Nudd sold monopole 851860 to Verizon on 11/24/99 and Verizon subsequently sold the monopole to Crown on 10/6/00. <u>See</u> March 2007 Nudd Aff., ¶9 at Doc. # 62. Nudd sold monopole 868142 to Verizon on 10/7/99 and Verizon subsequently sold the monopole to Crown on 8/11/00. <u>See id.</u> Nudd sold monopole 800629 to Summit Technical Group ("STG") on 2/22/99 and STG subsequently sold the monopole to Crown on 3/24/00. <u>See id.</u> Nudd sold monopole 801511 to STG on 9/30/99 and STG subsequently sold the monopole to Crown on 3/30/00. <u>See id.</u> Thus, Underhill claims that the latest date upon which Underhill reviewed and sealed the original drawings and calculations for these monopoles was on or before March 3, 2000. <u>See</u> AUSOF, ¶7.

[8]Underhill claims it provided a separate invoice to Nudd for the services related to the 8 monopoles at the time the original drawings and calculations were reviewed and sealed and those invoices were paid by Nudd at that time. <u>See id.</u>, ¶8. In addition, Underhill contends it had no involvement in the manufacture, delivery or installation of the 8 monopoles. <u>See id.</u>, ¶10.

See id. Crown contends that George Underhill described the work as "corrections" work, wherein he was to review the details and calculations in order to strengthen the monopoles that were flawed due to the missing gust response factor. See id. Crown claims that Underhill performed the corrections work for Nudd relating to the monopoles for Crown as well as monopoles for other Nudd customers. See id.

B.   **Monopoles 816592 and 816745**

It is undisputed that monopoles 816592 and 816745 were originally manufactured and sold by Nudd prior to October 6, 2000. See AUSOF ¶17.[9] Underhill did not review or seal the original design drawings or calculations for monopoles 816592 and 816745. See id. ¶20. In addition, Underhill did not communicate with Crown at any time before October 6, 2000 with regard to the two monopoles, 816592 and 816745. See id. ¶21. Crown contends and Underhill does not dispute that it reviewed and approved drawings in relation to monopoles 816592 and 816745 on July 24, 2003 and September, 2003, respectively. See CSMF, ¶8. However, Underhill claims that its review and sealing of the engineering calculations and analysis performed for Nudd in 2003 for monopoles 816592 and 816745 was not a representation that the monopoles did not suffer from any potential structural deficiencies. See AUSOF ¶23.

---

[9]Nudd originally sold monopoles 816592 and 816745 to an entity other than Crown before October 6, 2000. See AUSOF, ¶18. Later, Crown acquired the two monopoles from an entity other than Nudd on October 6, 2000. See AUSOF, ¶19.

### C.   Monopoles 806335, 806682, 816529, 816594, 816687, 816718, 816795

Underhill contends that no engineer has been identified as having provided professional services for seven of the monopoles identified above and thus summary judgment is appropriate. According to Crown, Nudd produced in discovery a structural analysis dated November 2000 for monopole 806335, which was signed by Underhill, indicating that Underhill performed some services relating to this monopole. See Barley Aff., ¶8. The monopole was originally designed on or about March 27, 1997. There is no further information relating to this monopole. With regard to the remaining 6 monopoles at issue, Crown contends that while fact discovery is complete, it is likely that additional discrete discovery may be conducted. See CSMF, ¶2. No expert discovery has occurred. See id.

### D.   Twenty-Two Remaining Monopoles

Underhill claims summary judgment is proper with regard to the remaining 22 monopoles for which it provided no professional services. Underhill contends that discovery shows that it has no relationship to these 22 monopoles. Crown has not disputed Underhill's assertion with respect to this issue. Indeed, Crown concedes that the identities of the monopoles are not in dispute and the parties have completed a majority of fact discovery. All that remains is expert discovery, which should not affect any of

the identities of the engineers Crown has identified as performing the original monopole design.

### E.   Cross-Claims for Contribution and Indemnity

Nudd hired independent engineers to review and stamp the design documents for each of the monopoles. Underhill verbally agreed with Nudd to review and stamp the design documents of certain monopoles as discussed above. Further, Nudd hired Carini, among others to review and stamp certain of the monopoles not reviewed by Underhill. It is undisputed that Carini provided no services with respect to the eight monopoles numbered 801343, 801719, 802128, 804636, 851860, 868142, 800629 and 801511. See UASOF, ¶12. Accordingly, Underhill had no contractual relationship with Carini. See id., ¶14.

## DISCUSSION

### I.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought. See Scott v. Harris, 550 U.S. 372, ___; 127 S.Ct. 1769, 1776 (2007). If, after considering

8

the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. See Scott, 550 U.S. at ___; 127 S.Ct. at 1776 (citing Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587.

**II.   Statute of Limitations**

**A.   Professional Negligence and the Continuous Treatment Doctrine**

Under New York law, the statute of limitations for commencing an action to recover damages for non-medical professional malpractice is three years. See CPLR §214(6). The limitations period begins to accrue upon actual completion of the work to be performed and consequent termination of the professional relations. See Kliment v. McKinsey, 3 N.Y.3d 538 (2004). However, "completion" of the work is not statutorily defined and must be judicially interpreted on a case-by-case basis in light of the given situation and responsibilities of the design professional. See Parsons Brinckerhoff Quade & Douglas v. EnergyPro Constr. Partners, 271 A.D.2d 233, 234 (1st Dept. 2000).

**1.   Monopoles 851860, 868142, 800629 and 801511**

Crown contends that the professional services giving rise to Crown's claims occurred less than three years prior to the commencement of this action and constituted a continuing professional relationship that tolls the statute of limitations. See Pl. Br. at 8. Underhill claims that with respect to monopoles

851860, 800629, 801511 and 868142 the latest date upon which Underhill reviewed and sealed the original drawings and calculations for these monopoles was on or before March 3, 2000. The continuous treatment doctrine provides that an owner is entitled to an extension or tolling of the statutory period applicable to its potential causes of action against a professional for as long as the professional relationship continues. See Greene v. Greene, 56 N.Y.2d 86 (1982). The doctrine, which was first applied in medical malpractice cases,[10] is applied in architectural and engineering malpractice cases to prevent architects and engineers from concealing the cause of defects until the statutory period has passed. See Board of Educ. of Hudson City School Dist. v. Thompson Const. Corp., 111 A.D.2d 497 (3d Dep't 1985); Broome County v. Vincent J. Smith, Inc., 78 Misc. 2d 889 (Sup 1974).

Importantly, "the 'continuous treatment' must be treatment for the same or related condition ...; not mere continuity of a general professional relationship.... But 'relation' is not the only element which must be found in order for the doctrine to apply; there must also be continuity ...." See Tool v. Boutelle, 91 Misc.2d 464 (Sup.Ct. Albany Co. 1977). In Tool, which was an action for the malpractice of an engineer-surveyor, "[c]ontinuity" was defined as "being continuous ... state of continuing without essential change." citing Webster's Third New International

---

[10]Borgia v. City of New York, 12 N.Y.2d 151 (1962), order aff'd, 15 N.Y.2d 665 (1964).

Dictionary, Unabridged, 493 (1968). "Continuous" meant "stretching on without break or interruption." See id.; see also Highland Sand & Gravel, Inc. v. Rust Env't & Infrastructure of New York, Inc., 281 A.D.2d 516, 517 (2d Dept. 2001) (Court held that continuous relationship doctrine did not toll the statute of limitations because services rendered were "discrete and complete[.]")

Here, Nudd sold monopoles 851860, 800629, 801511 and 868142 to entities other than Crown such as Verizon or STG.[11] Subsequently, these entities sold the monopoles to Crown. Underhill was not involved in the transaction between Crown and the outside entities that sold the monopoles to Crown. Accordingly, while Underhill sealed the original design documents for monopoles 851860, 800629, 801511 and 868142 at Nudd's request in connection with the sale to the outside entities, Underhill played no role regarding plaintiff's purchase of the monopoles from the outside entities. In addition, Underhill provided no services to Crown relating to the monopoles at issue subsequent to the sale by Nudd. Thus, the services rendered by Underhill for these four monopoles were discrete and complete, at the latest, on March 2000. See Highland, 281 A.D.2d at 516. Underhill's sealing of the related design documents was completed more than three years before the commencement of the law suit on April 8, 2005. Accordingly, Crown is barred by the three-year statute of limitations found in CPLR

_____

[11] See n.6.

§214(6). Therefore, as to monopoles 851860, 800629, 801511 and 868142 summary judgment is granted in favor of Underhill.

### 2. Monopoles 801343, 801719, 802128, 804636

Underhill claims that it sealed Nudd's design documents for monopoles 801719 and 802128 in February 2001 and monopoles 801343 and 804636 in July 2001 and October 2001 respectively. Thereafter, Nudd sold the monopoles directly to Crown. Underhill argues that services concerning these monopoles were complete at the time they were billed and Crown paid for them. See Underhill Reply Br. at 3. Crown however, contends that Underhill's engagement by Nudd was not limited to a pole-by-pole basis but rather Nudd engaged Underhill from 2001 through 2003 to work with Nudd to evaluate the contention by other Nudd customers that monopoles designed by Nudd were flawed. See Crown Br. at 3. Accordingly, Underhill performed "corrections" assignment from late 2001 until at least 2003 and this constitutes continuous treatment. In addition, Underhill reviewed and approved drawings in relation to monopoles 816592 and 816745 on July 24, 2003 and September, 2003, respectively.[12]

As discussed above "completion" of the work performed by a professional is not statutorily defined and must be judicially interpreted on a case-by-case basis in light of the given situation and responsibilities of the design professional. See Parsons Brinckerhoff, 271 A.D.2d at 234. Based on the undisputed facts,

---

[12]Crown also claims that Underhill's review and approval of these designs is a breach of Underhill's professional duty which occurred until at least September 2003. See id. at 14.

Underhill reviewed, sealed and completed its services for monopole 801343 in July 2001, monopole 801719 in February 2001, monopole 802128 in February 2001 and monopole 804636 in October 2001. See Underhill Aff., ¶31. Thereafter, Nudd sold the monopoles directly to Crown. See id. The Court finds that Underhill's services with regard to each of the above-mentioned monopoles were completed upon the sealing of the original drawings and calculations for the particular monopole. Accordingly, Crown's claims regarding monopoles 801343, 801719, 802128 and 804636 is time-barred under CPLR 214(6) since any professional services Underhill provided were completed, at the latest, on or before November 1, 2001.

Crown contends that Underhill's performance of services for Crown and Nudd from 2001 through 2003 makes the continuing treatment doctrine applicable thereby tolling the statute of limitations. From 2001 until at least 2003, Crown argues that Underhill was retained by Nudd to evaluate the defective monopole design relating to Nudd's entire monopole portfolio. See CSMF, ¶8. According to Crown, Nudd hired Underhill to evaluate all monopole towers designed by Nudd which did not incorporate a gust response factor. Underhill counters by arguing that it had no communication with Crown specifically concerning the four monopoles in question at any time nor did Underhill provide any further service to Crown relating to these monopoles. See Underhill Aff., ¶¶31-32. Accordingly, Underhill argues that there neither the requisite

continuity nor the related subsequent services trigger the continuous treatment doctrine. See Def. Reply. Br. at 4.

The rationale behind the continuous representation doctrine is based upon the view that an unknowledgeable layperson will often be unaware of an error in work being performed by a professional for as long as that professional remains in a position of control over that work. The courts have reasoned that while the professional remains in control, he may intentionally or unintentionally conceal facts from the layperson regarding a mistake that has been made.[13] Generally, the courts, in applying the doctrine, rely on factors that comport with this rationale, namely: that there has been a continuous representation by a professional after a mistake has been made and that representation is related to the work performed in error. "[R]elation is not the only element which must be found in order for the doctrine to apply; there must also be continuity." See Tool, 91 Misc.2d at 464; see also Gilbert Properties, Inc. v. Millstein, 40 A.D.2d 100, 102-103 (1st Dep't. 1972).

For the continuous representation doctrine to toll the running of the statute of limitations, the continuous representation must be in connection with the particular transaction which is the

---

[13]In Borgia, 12 N.Y.2d at 151, the Court of Appeals held that it would be "absurd to require a wronged patient to interrupt corrective efforts by serving a summons" on a physician or hospital. However, the Court also recognized the potential for suits being commenced many years later where a patient continues to consult with the same physician for any kind of illness, stating, "the continuous treatment we mean is treatment for the same or related illness or injuries continuing after the alleged acts of malpractice, not mere continuity of a general physician-patient relationship." See id. at 157. "This doctrine has been continued in its applicability to cases which factually present some plausible theory for concluding that the injury complained of was the result of a continued course of treatment, and not merely the result of one or more separate and distinct acts. See id. at 159.

subject of the action and not merely a continuation of a general professional relationship. See Parlato v. Equitable Life Ins. Soc. of the United States, 299 A.D.2d 108, 115 (1st Dept. 2002); see also Zarefv. Berk & Michaels, P.C., 192 A.D.2d 346 (1st Dept. 1993); Naetzker v. Brocton Central Sch. Dist., 50 A.D.2d 142, 148 (4th Dept. 1975), reversed on other grounds, 41 N.Y.2d 929 ("'continuous treatment' must be treatment for the same or related injury or damage, continuing after the alleged acts of malpractice; not mere continuity of a general professional relationship.") The undisputed facts in this case, however, do not satisfy the rationale justifying an application of the continuous treatment doctrine. The services rendered by Underhill with regard to monopoles 801343, 801719, 802128, 804636 were discrete and complete, at the latest in November 2001.

Underhill does not dispute that it reviewed and approved drawings in relation to monopoles 816592 and 816745 on July 24, 2003 and September, 2003, respectively. However, these analyses were undertaken in relation to an issue that arose out of complaints regarding monopole design calculations that lacked a "gust response factor." None of the testimony cited by Crown connects the corrective work performed on monopoles 816592 and 816745 to the completed work performed by Underhill on monopoles 801343, 801719, 802128, 804636. Accordingly, the subsequent, corrective work performed by Underhill constituted a renewal,

rather than a continuation of the relationship between Underhill, Nudd and Crown. See Highland Sand, 281 A.D.2d at 517 (Court held that the doctrine did not apply where services rendered were discrete and complete and, "the subsequent reports prepared in 1991 and 1994 constituted a renewal, rather than a continuation, of the relationship" between plaintiff and defendant). Accordingly, Crown's claims regarding monopoles 801343, 801719, 802128 and 804636 is barred under CPLR 214(6). Thus, summary judgment in favor Underhill is granted.

**B.    Monopoles  806335,  806682,  816529,  816594,  816687, 816718, 816795**

It is undisputed that except for monopole 806335, no engineer has been identified as having provided professional services for monopoles 806682, 816529, 816594, 816687, 816718 and 816795. According to Crown, Nudd produced in discovery a structural analysis dated November 2000 for monopole 806335, which was signed by Underhill, indicating that Underhill performed some services relating to this monopole. See Barley Aff., ¶8. The monopole was originally designed on or about March 27, 1997. There is no further information relating to this monopole. However, regarding the remaining 6 monopoles at issue, while fact discovery is complete, it may be likely that additional discrete discovery conducted may produce evidence linking Underhill to these monopoles as seen in monopole 806335.

16

In this regard, the Court finds that Underhill has not demonstrated that "there is no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law" with respect to monopoles 806335, 806682, 816529, 816594, 816687, 816718 and 816795. <u>See</u> Fed.R.Civ.P. 56(c) (Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). Thus, summary judgment is denied as additional discovery may show that Underhill performed some services regarding any or all of these monopoles.

C.   **Twenty-Two Remaining Monopoles**

It is undisputed that Underhill provided no professional services for the 22 remaining monopoles. Indeed, Crown concedes that the identities of the professionals that provided services for these monopoles in question are not in dispute and the parties are at the close of a majority of fact discovery. All that remains is expert discovery, which should not affect any of the identities of the engineers Crown has identified as performing the original monopole design. Therefore, summary judgment in favor of Underhill as to these 22 remaining monopoles is granted. <u>See</u> <u>See</u> <u>Scott</u>, 550 U.S. at _____; 127 S.Ct. at 1776 (citing <u>Matsushita</u>, 475 U.S. at 586-587 (a grant of summary judgment is appropriate if, after considering the evidence in the light most favorable to the

17

nonmoving party, the court finds that no rational jury could find in favor of that party).

### III. Underhill's Motion for Summary Judgment on Carini's Cross-Claims

Underhill moves for summary judgment on Carini's cross-claim seeking indemnity and/or contribution from Underhill on the basis that both Underhill and Carini did not work on any of the monopoles relative to which Underhill seeks summary judgment, which are all monopoles except 816745 and 816592. See Underhill Br. at 10. Underhill argues that summary judgment dismissing Carini's cross-claims is appropriate because Carini has no basis to seek contribution or indemnity from Underhill relating to monopoles for which Underhill did not provide professional services. Carini has not opposed Underhill's motion for summary judgment dismissing Carini's cross-claims. In addition, it is undisputed that Carini provided no services with respect to the eight monopoles numbered 801343, 801719, 802128, 804636, 851860, 868142, 800629 and 801511. See UASOF, ¶12. In addition, there is no dispute that Underhill had no contractual relationship with Carini. See id., ¶14. The Court finds that Underhill's motion for summary judgment on Carini's cross-claims seeking indemnity and/or contribution is granted. Thus, as a matter of law the Court finds that except for monopoles 816745 and 816592, Carini is not entitled to contribution or indemnification as to the remaining monopoles at issue. See Fed.R.Civ.P. 56(c) (Summary judgment will be granted if the record

demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.")

## CONCLUSION

For the reasons stated above, Underhill's motion for summary judgment seeking dismissal with respect to Crown's professional negligence claim is granted in part and denied in part and Underhill's motion for summary judgment seeking dismissal of Carini's cross-claims for contribution and indemnity is granted. The court finds the following: (1) as to monopoles 851860, 800629, 801511 and 868142 Crown is barred by the three-year statute of limitations provided in CPLR §214(6) and therefore summary judgment is granted in favor of Underhill; (2) Crown's claims regarding monopoles 801343, 801719, 802128 and 804636 is barred pursuant to CPLR 214(6) and therefore summary judgment is granted in favor of Underhill; (3) with regard to monopoles 806335, 806682, 816529, 816594, 816687, 816718 and 816795 additional discovery may show that Underhill performed some services regarding any or all of these monopoles and summary judgment is therefore denied without prejudice; (4) as to the 22 remaining monopoles (801344, 806677, 816552, 816574, 816586, 816603, 816607, 816633, 816638, 816644, 816655, 816665, 816666, 816676, 816679, 816686, 816697, 816701, 816716, 816734, 816742 and 851875), summary judgment in favor of Underhill is granted; and (5) except for monopoles 816745 and

816592, Carini is not entitled to contribution or indemnification as to the remaining monopoles at issue and Underhill's motion for summary judgment on Carini's cross-claims seeking indemnity and/or contribution is granted.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:     Rochester, New York
           February 12, 2009